RECEIVED

MAY 0 5 2014

TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT, LOUISIANA
BY: _____

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**MONROE DIVISION**

| | |
|---|---|
| **HOLLY WILSON** | **CIVIL ACTION: 11-1388** |
| **VERSUS** | **JUDGE DONALD E. WALTER** |
| **STATE OF LOUISIANA, ET AL** | **MAGISTRATE JUDGE HAYES** |

## MEMORANDUM RULING

This case is a result of Plaintiff Holly Wilson's dismissal from the faculty of the University of Louisiana at Monroe ("ULM") pursuant to a program discontinuance policy. Before the Court are several motions which will all be consolidated into this ruling. Defendants filed a motion to dismiss and for summary judgment. [Doc. 30]. Plaintiff filed a cross-motion for partial summary judgment. [Doc. 31]. After the Complaint was later amended, Defendants filed another motion to dismiss and motion for summary judgment [Doc. 71] and then Plaintiff filed another motion for summary judgment [Doc. 74].

Having reviewed the motions, the submissions of the parties, and the record and the applicable law, Defendants' motions for summary judgment [Doc. 30; 71] are hereby **GRANTED** and Plaintiff's motions for partial summary judgment [Doc. 31; 74] are hereby **DENIED**. Ultimately, this case is dismissed in its entirety.

## BACKGROUND INFORMATION

Plaintiff Holly Wilson asserts several federal and state law claims in relation to her former employment at the University of Louisiana at Monroe ("ULM") within the University of Louisiana System ("UL System/ULS"). Defendant Board of Supervisors is the official management board over

1

all institutions within and for the UL System and its member universities, including ULM. Defendant

Stephen Richters was the Provost and Vice-President for Academic Affairs at ULM and Defendant

Jeffrey Cass was the Dean of College of Arts and Sciences at ULM at all relevant times to the

Complaint. [Doc. 34-3; Doc. 100].

Wilson was hired in 1997 as an assistant professor of philosophy at ULM.  Wilson was a

tenured professor of philosophy at ULM from August 2002 until her discharge on August 28, 2010.

[Doc. 30-1]. Wilson was the only philosophy employee. According to the Faculty and Staff

handbook, "Tenured faculty shall retain their status until they retire, resign, or are terminated for

cause or as a result of financial exigency." [Doc. 30, Exh. 8]. The handbook further notes, "Tenure

shall be granted and held *only within an academic discipline* that is offered at the institution and

assures renewed appointments only within that discipline." *Id.*   (Emphasis added). In another

relevant section of the handbook, cause for terminating tenured faculty is explained as follows:

> Cause for discharge, termination of contract, or demotion in rank of tenured faculty
> shall consist of conduct seriously prejudicial to the college or university system such
> as infraction of law or commonly accepted standards of morality, failure to follow
> proper orders, violation of institutional or Board rules and regulations, neglect of
> duty, incompetence, or other conditions that impair discharge of duties and the
> efficiency of the institution. Financial exigency also constitutes cause. *The foregoing
> enumeration of cause shall not be deemed exclusive*. However, action to discharge,
> terminate, or demote shall not be arbitrary or capricious, nor shall it infringe upon
> academic freedom. [Doc. 30, Exh. 11] (emphasis added).

Additionally, the handbook briefly describes a petition for review, whereby the Board may be

petitioned. *Id.*

During Wilson's time at ULM, she had complained of discrimination on a few occasions. In

2005, Wilson filed a charge related to gender discrimination relative to "moving her offices." [Doc.

1; Doc. 31-4 (Exh. 136)]. She named Dr. Richters and Department Head of History and Government

2

Chris Blackburn as the persons who committed acts of discrimination against her. An Advisory

Committee found that all of Wilson's grievances were without merit. [Doc. 31-4 at pp. 220-21 (Exh.

136)]. Wilson filed a retaliation charge in 2006 and named Blackburn as the person who committed

the alleged acts of retaliation. She received a right to sue letter in 2007; however, she did not pursue

the claim. [Doc. 34-3 at p. 4].

Most of the events central to this dispute have their origination in the 2008-09 time frame.

During this time period, as a result of budget deficits, ULM initiated a program review in order to

determine which programs may have to be consolidated or eliminated. [Doc. 30-19]. The underlying

reason for this program review was to address the $7.5 million dollar budget reduction strategy for

the 2008-2010 fiscal year budget to reach a balance. [Doc. 30 (Dr. Eric Pani Aff.)]. The specific

program review policy states that recommendation for discontinuance is an internal decision made

by the university president, System President, and the Board. [Doc. 30-19]. If the decision results

in termination of faculty members, it requires approval of the UL System President and the Board

of Supervisors for the UL System. If a tenured faculty member is to be terminated, they are given

a one year formal notice of a final terminal contract. Wilson's program of philosophy was in the

College of Arts and Sciences. The College of Arts and Sciences Steering and Budget Committee

(ASSBC) was charged to determine what actions could be taken to eliminate the budget deficit in

2009 within its college. [Doc. 30]. The ASSBC recommended eliminating the philosophy program.

The next level of review was the Academic Affairs Budget Reduction Committee (AABRC). The

AABRC reviewed each college's recommendations for budgetary reduction and provided

recommendations in the summer of 2009 to the Strategic Resources Allocation Advisory Committee

(SRAC). The AABRC recommended that the philosophy program be eliminated. *Id.*

The SRAC reviewed and examined each of the recommendations submitted and provided a report to the University Planning Committee (UPC) and to ULM President James Cofer. Dr. Cofer received the recommendations from across the campus process and submitted a final recommendation to the Board of Supervisors which requested approval of elimination of several programs, including the philosophy program. *Id.* The UL System publicly posts their meeting dates and agenda and permit public comment on agenda items. Wilson attended that meeting and had the opportunity to appeal to the Board not to approve the elimination of philosophy but did not. Other faculty spoke against proposed program eliminations. [Doc. 100 at p. 12]. The Board of Supervisors of the UL System received the recommendations and approved of the elimination of programs requested by ULM on August 28, 2009. [Doc. 30]. This decision eliminated the philosophy program along with its faculty positions; Wilson was the only faculty member within this program.

In sum, the program discontinuance process permitted each review level to adjust, amend, expand, or restrict the recommendations; every level during the process recommended the elimination of philosophy based on the qualitative and quantative evidence received.[1] Key factors considered for the elimination of philosophy included the lack of participation, the least impact on students, and the ability to save money over long term. [*Id.*; Doc. 33 at p. 20].

Dr. Cass provided Wilson with her notice on July 22, 2009 of a terminal year contract followed by a final appointment letter dated August 3, 2009 signed by both the Dean and the President. [Doc. 30-26; Doc. 30-27]. The stated reason for her termination was the program discontinuance policy. Wilson was notified that as of May 22, 2010 her employment was terminated; however, this date was later extended to August 28, 2010. [Doc. 34-3]. Wilson appealed the

---

[1] [Doc. 30, Exh. 4]. The review considered multiple factors such as student enrollment/demand, cost, etc.

4

elimination of philosophy. The Appeals Committee met and denied the appeal, upholding the decision of the budget review process to discontinue philosophy at ULM. [Doc. 30-23; Doc. 30-31]. The Appeals Committee unanimously concluded that Wilson was not denied any rights she was owed. *Id.* President Cofer concurred with the Appeals Committee's decision after reviewing the matter. [*Id.*; Doc. 31-4; Doc. 30-31]. Wilson's final day of employment was August 28, 2010.

Wilson filed a complaint with the EEOC in October 2009. [Doc. 31-4]. She received her notice of right to sue on April 28, 2011. On July 26, 2011, Wilson filed the instant civil rights complaint under 42 U.S.C. § 1983 against Defendants: the State of Louisiana; the "University of Louisiana System and Louisiana Board of Supervisors in its management or governing capacity over University of Louisiana at Monroe ('ULS/ULM');" Stephen Richters, Provost and Vice-President for Academic Affairs at ULM, sued in his individual capacity only; and Jeffrey Cass, Dean of College of Arts and Sciences, also only sued in his individual capacity. (Compl.). Wilson contends that her discharge violated her due process rights under the U.S. Constitution. *Id.* She further argues that the State of Louisiana and ULS/ULM unlawfully retaliated against her under 42 U.S.C. § 2000e because she had filed prior EEOC charge(s). *Id.* She further alleges that all four defendants violated her contractual rights as a tenured professor under state law. *Id.* In her amended complaint, Wilson added a claim against all four defendants for violation of her rights under the Impairment of Contract Clause of the U.S. Constitution. (Amend. Compl.). She seeks compensatory and punitive damages, reinstatement to her tenured position with an associated increase in pay, and attorney's fees. *Id.*

On November 15, 2013, Defendants filed a motion to dismiss and for summary judgment. [Doc. 30]. On that same date, Wilson filed a cross-motion for partial summary judgment. [Doc. 31]. Plaintiff later amended her complaint to add a claim under 42 U.S.C. § 1983 against the two

individual Defendants (Dr. Cass and Dr. Richters) in their official capacity, and to shore up her factual allegations against Richters and Cass in response to Defendants' hybrid motion to dismiss/summary judgment. [Doc. 34; Doc. 60]. On March 12, 2014, Dr. Cass and Dr. Richters filed a motion to dismiss and/or summary judgment seeking dismissal of Plaintiff's newly added official capacity claims against them. [Doc. 71]. In support of their motion, Defendants argued that Richters and Cass no longer serve in their former capacities, and therefore, do not have the authority to effect the injunctive relief sought by Plaintiff. In response, on April 2, 2014, Plaintiff filed a motion to substitute the parties to reflect the changes in the positions. [Doc. 76]. Magistrate Judge Hayes granted the substitution in part and denied it in part by ruling that Dr. Sandra Lemoine would substitute for Dr. Cass and that Dr. Nick Bruno would substitute for Dr. Richters in their official capacities only. [Doc. 97]. For purposes of the instant motions, Dr. Cass and Dr. Richters will remain the named individual defendants for analyzing this matter.

## LAW AND ANALYSIS

### 1. Standard of Review

This Court will analyze this case as a summary judgment. Summary judgment is proper when, after reviewing "the pleadings, the discovery and disclosure materials on file, and any affidavits," the court determines there is no genuine issue of material fact. FED.R.CIV.P. 56(c). The party seeking summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The party seeking summary judgment need not produce evidence negating the existence of material fact, but need only point out the absence of evidence supporting the other party's case. *Celotex*, 477 U.S.

at 323; *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1195 (5th Cir.1986).

Once the party seeking summary judgment carries its burden pursuant to Rule 56(c), the other party must come forward with specific facts showing that there is a genuine issue of material fact for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The showing of a genuine issue is not satisfied by creating " 'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' 'unsubstantiated assertions,' or by only a 'scintilla' of evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994) (citations omitted). Instead, a genuine issue of material fact exists when the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party responding to the motion for summary judgment may not rest upon the pleadings, but must identify specific facts that establish a genuine issue. *Id.* The nonmoving party's evidence, however, "is to be believed, and all justifiable inferences are to be drawn in [the nonmoving party's] favor." *Id.* at 255; *see Hunt v. Cromartie*, 526 U.S. 541, 552 (1999).

## 2. 42 U.S.C. § 1983 Overview

Title 42 U.S.C. § 1983 does not provide a general remedy for state law torts or allow access to federal courts for all individuals suffering injuries at the hands of state actors. *White v. Thomas*, 660 F.2d 680, 683 (5th Cir.1981). The statute "affords a remedy only to those who suffer, as a result of state action, deprivation of 'rights, privileges, or immunities secured by the Constitution and laws' of the United States." *Id.* (*quoting* 42 U.S.C. § 1983). To state a cognizable § 1983 claim, " 'a plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law.' " *Doe ex rel. Magee v. Covington County Sch. Dist.*, 675 F.3d 849, 854 (5th Cir.2012)

7

(*quoting James v. Tex. Collin Cnty.*, 535 F.3d 365, 373 (5th Cir.2008)).

### 3. Defendants State of Louisiana and ULM/ULS Are Entitled To Immunity Under the Eleventh Amendment

Wilson's Section 1983 claims name as defendants a state agency, the Board, and a university not subject to suit, as well as state officials in official and individual capacity. The Eleventh Amendment prohibits suits against state governments and their agencies unless specifically abrogated by Congress or consented to by the state. *Hans v. Louisiana*, 134 U.S. 1 (1890); *Seminole Tribe of Florida v. Florida*, 517 U.S. 44 (1996); *Kimel v. Florida Bd. of Regents*, 528 U.S. 62 (2000). Louisiana has not waived its sovereign immunity. Article XII, Section 10, of the Louisiana Constitution of 1974; LA. R.S. 13:5106.

The Plaintiff appears to concede that Eleventh Amendment immunity shields ULM, the UL System, and the State from any liability in this action. [Doc. 35]. Further, Wilson states that she has no opposition to dismissing ULM from this action. For these reasons, ULM and the State are entitled to judgment as a matter of law with respect to Wilson's assertions via § 1983. Wilson's request for prospective relief will be addressed in a subsequent section of this opinion.

### 4. Defendants Richters and Cass Are Entitled to Qualified Immunity To The Extent They Are Sued In Their Individual Capacities

Defendants Richters and Cass are being sued in their individual capacities; Plaintiff seeks money damages. The Eleventh Amendment does not bar suits against officers in their individual capacities. *See Hudson v. City of New Orleans*, 174 F.3d 677, 687 n.7 (5th Cir.1999). "Qualified immunity protects public officers from suit if their conduct does not violate any 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Prison Legal News v. Livingston*, 683 F.3d 201, 224 (5th Cir.2012) (*quoting Harlow v. Fitzgerald*, 457 U.S. 800,

818 (1982)). " 'Although nominally an affirmative defense, the plaintiff has the burden to negate the defense once properly raised.'" *Poole v. City of Shreveport*, 691 F.3d 624, 627 (5th Cir.2012) (*quoting Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir.2008)).

In order to overcome the defense of qualified immunity, the plaintiff must show: "(1) the official violated a statutory or constitutional right; and (2) the right was clearly established at the time of the challenged conduct." *Khan v. Normand*, 683 F.3d 192, 194 (5th Cir.2012) (*citing Ashcroft v. al-Kidd*, 131 S.Ct. 2074, 2080, 179 L.Ed.2d 1149 (2011)), cert. denied, 133 S.Ct. 840 (2013). A constitutional right is clearly established when it is "sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.* (citation omitted). Courts have discretion to address the objective reasonableness inquiry first. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009). The defense of qualified immunity, "even on summary judgment, 'gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law.'" *Poole*, 691 F.3d at 627. In addition, the defense alters the summary judgment burden of proof by requiring the plaintiff to evidence a genuine issue of material fact. *See Tolan v. Cotton*, 713 F.3d 299, 304 (5th Cir.2013) (*citing Michalik v. Hermann*, 422 F.3d 252, 262 (5th Cir.2005)).

In a nutshell, the court finds that Wilson has failed to evince issues for trial as to Richter and Cass' alleged violation of any constitutional right. This Court readily concludes that the actions of Richters and Cass were objectively reasonable. Quite clearly, the record shows Cass and Richters were proceeding in the program elimination process along with many other faculty and staff as directed by both the policy and the president of the university. During that process, it was determined where cuts could be made, and one of those was, in fact, philosophy. The decision was affirmed at

9

every level of the process and was ultimately approved by the Board of Supervisors. It is also worth

noting that Dr. Cass and Dr. Richters had no decision making authority acting alone. Furthermore,

the actions of Cass and Richters that form the basis for Wilson's Section 1983 claims were reviewed

by an impartial faculty Appeals Committee. The findings of the Appeals Committee demonstrate that

their actions were objectively reasonable, and the committee concluded that Wilson's program was

properly terminated and she was afforded all proper due process. [Doc. 30-32]. Finally, as we will

discuss *infra*, there is no evidence of a statutory or constitutional right violation.

**5. Defendants Richters and Cass Are Entitled to Immunity To The Extent They Are Sued In Their Official Capacities**

Defendants Richters and Cass are also being sued in their official capacities; Plaintiff seeks

prospective relief on this claim. Specifically, Wilson seeks an injunction reinstating Plaintiff to a

"suitable position" at ULM and appoint a Special Master to determine the "suitable position." [Doc.

31-3 at p. 1; Doc. 74].

Richters and Cass, sued in their official capacity as employees of ULM, are immune from

suit under the Eleventh Amendment subject to the exception that will be discussed in the next

section. *Delahoussaye v. City of New Iberia*, 937 F.2d 144, 149 (5th Cir.1991); *Colvin v. Bd. of

Sup'rs of Univ. of Louisiana*, 12-1829, 2014 WL 108919 (W.D. La. Jan. 9, 2014). Furthermore, other

than a few vague references incorporated into the Complaint and subsequent motions, the body of

the Plaintiff's Complaint does not allege any specific actions taken by Defendants Richters or Cass

that would give rise to liability on their part. The record as a whole strongly supports this finding.

Wilson's request for prospective relief with respect to due process will be addressed in the next

section.

10

**6. Due Process Claim(s) Dismissed**

While immunity forecloses Wilson's claims for monetary damages against all Defendants under 42 U.S.C. § 1983, the court must still address whether the Plaintiff has asserted a cognizable claim for prospective relief against Defendants Richters or Cass in their official capacity. *See Will v. Michigan Dept. of State Police*, 491 U.S. 58, 67 (1989).[2] To assert a claim under § 1983 claim, "'a plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law.' " *Doe, supra*, 675 F.3d 849 at 854. Thus, to obtain prospective relief, Wilson must provide evidence that one or more of the Defendants violated her procedural or substantive due process rights under the Fourteenth Amendment. Wilson contends in her Complaint and motions for partial summary judgment that Defendants deprived her of a property right in her tenured position without due process. More specifically, Wilson argues that her denial of due process involves: (1) the failure of her employer to follow procedures prescribed by the UL System which led to the discontinuance of the philosophy program; (2) the failure of her employer to permit her to keep her tenure and find her other suitable employment for her, including a non-teaching position; and (3) failure of her employer to permit her to keep her tenure and teach religion. [Doc. 40]. Thus, she argues her due process rights were violated. This Court concludes that Wilson has not shown sufficient evidence of a deprivation of her due process rights.

---

[2] With respect to official capacity suits, the Supreme Court carved out an exception to Eleventh Amendment immunity in *Ex parte Young*, 209 U.S. 123 (1908), which held that a plaintiff is not barred from bringing a suit for prospective relief against a state employee acting in his official capacity. *Nelson v. Univ. of Texas at Dallas*, 535 F.3d 318, 322 (5th Cir. 2008) *citing, Stroman Realty, Inc. v. Wercinski*, 513 F.3d 476, 482 (5th Cir.2008). Under *Ex Parte Young*, a federal court can order injunctive relief which requires the stated official sued in his official capacity to conform his future conduct to the commands of federal law; *Ex Parte Young* does not permit a federal court to grant prospective injunctive relief requiring the state official to conform his future conduct to state law. *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 104-5 (1984).

At the outset, this Court notes that Plaintiff's due process arguments are rather scattershot. While Plaintiff lists three primary due process arguments mentioned in the preceding paragraph, she appears to assert broader due process arguments at other times.[3] For this reason, we will discuss all of the relevant contours of the due process claims raised by Plaintiff. At the end of the day, the decisive question before the court is fairly simple: Did Wilson receive the due process that she was owed? We will also note at the outset that this case presents a rather unique due process issue in light of the program discontinuance policy. This Court even ordered additional briefing on the due process claims. [Doc. 49].

A. Brief Overview of Due Process

The Due Process Clause of the Fourteenth Amendment provides that no State shall "deprive any person of life, liberty, or property, without due process of law". U.S. CONST. AMEND. XIV, § 1. There can be no deprivation of substantive or procedural due process in the absence of a protected property right or liberty interest. *See, e.g., Johnson v. Rodriguez*, 110 F.3d 299, 308 (5th Cir. 1997); *DePree v. Saunders*, No. 2:07cv185, 2008 WL 4457796, at *7 (S.D.Miss. Sept.30, 2008), aff'd, 588 F.3d 282 (5th Cir.2009). "Constitutionally protected property interests are created and defined by understandings that 'stem from an independent source such as state law....' " *DePree*, 588 F.3d at 289 (*quoting Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972)). Liberty interests may arise from state law or the Due Process Clause itself. *See Rhodes v. Thaler*, 713 F.3d 264, 266 n. 9 (5th Cir.2013) (*citing Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989)).

---

[3] For instance, in a later filing, Wilson asserts the following: "The chief reason why no Due Process was afforded to Dr. Wilson as to her tenure termination is that she was given no process whatsoever to appeal *tenure termination*." [Doc. 101-2 at p. 8].

B. Program Discontinuance and Pre-Termination Due Process Concerns

The Due Process Clause provides that the right to property cannot be deprived except pursuant to constitutionally adequate procedures. *See Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532 (1985). "[T]he due process clause does not require that a formal, adversarial hearing precede every decision affecting property." *Wozniak v. Conry*, 236 F.2d 888, 890 (7th Cir.2001). "[D]ue process is flexible and calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer*, 92 S.Ct. 2593, 2600 (1972). "[W]here a State must act quickly, or where it would be impractical to provide predeprivation process, postdeprivation process satisfies the requirements of the Due Process Clause." *Gilbert v. Homar*, 520 U.S. 924, 930 (1997). The Supreme Court has adopted a balancing of interests approach to determine what form of hearing is required prior to administrative action. *See Loudermill*, 470 U.S. at 545. The dictates of due process require consideration of three factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. *Matthews v. Eldridge*, 424 U.S. 319, 335 (1976).

Wilson's status as a tenured faculty member at ULM is uncontested. [Doc. 57 at p. 7]. Generally, tenured status means that Wilson had a property interest in continued employment with ULM. *See Roth*, 408 U.S. at 576; *see also Jones v. S. Univ. & A & M Coll. Sys. Through Bd. of Sup'rs*, 96-1430 (La. App. 1 Cir. 5/9/97), 693 So. 2d 1265, 1269 (noting that a tenured professor possesses a property interest which requires due process protection under both Louisiana and federal law). However, the tenure right is not absolute—it may not survive the demise of a program or

13

department due to financial exigency. *See Hulen v. Yates*, 322 F.3d 1229, 1242 (10th Cir. 2003). Tenure in the UL System is established by rule and provides that tenure is tied only to the discipline in which it was received. Once the discipline is eliminated, there is no position to which tenure attaches. In other words, Wilson's employment position no longer existed so her tenure did not exist. This is reinforced by the handbook, which provides: "Tenure shall be granted and held *only within an academic discipline* that is offered at the institution and assures renewed appointments only within that discipline." [Doc. 30, Exh. 8] (emphasis added). It is worth noting that the aforementioned provision stresses the importance of the discipline twice within the same sentence.

Even if Wilson had a property interest in her departmental assignment after it was eliminated based upon the terms and conditions of her position, she received all the process that was due. The discontinuance process that was implemented at ULM included multiple levels of review by multiple parties. The process evaluated both quantitative and qualitative data which were analyzed by various levels and by representatives from multiple departments, colleges, and ranks. [Doc. 31-4]. The key question is whether this satisfied the procedural protections that the Constitution requires under this particular situation. The Supreme Court has underscored that due process is not a fixed technical concept but rather a flexible concept providing "such procedural protections as the particular situation demands." *Gilbert v. Homar*, 520 U.S. at 930; *Matthews*, 424 U.S. at 334 ("'[d]ue process,' unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place and circumstances.").

Without question, Wilson's interest in maintaining her position was affected by the official action. However, as already noted, her tenure right was not absolute. Moreover, the governmental interest in reducing fiscal and administrative burdens in higher education is substantial. The

14

government has an equally important interest in ensuring the continuation of its institutions by making difficult decisions regarding program cuts. After balancing the three factors, the court concludes that Defendants' interests in implementing procedures to relieve the fiscal and administrative burdens as ordered by the state outweigh Wilson's private interest that was affected by program discontinuance policy and adopted by ULM. Furthermore, the program discontinuance policy provided more than adequate safeguards against the risk of an erroneous deprivation of Wilson's interest. The program discontinuance and subsequent termination was carefully vetted by the UL System's Board of Supervisors, staff, and legal counsel, and there was faculty feedback and transparency on the process.

The record shows that Wilson was well aware that philosophy was being considered for elimination. [Doc. 30-5 at pp. 8-9]. There is no evidence that any of the program discontinuance activity was covert or surreptitious, and there is substantial evidence that it was in fact notorious. *Texas Faculty Ass'n v. Univ. of Texas at Dallas*, 946 F.2d 379, 387 (5th Cir. 1991). The record shows that Dr. Cass spoke with Dr. Thameling, the head of the department which contains philosophy, about the possibility that philosophy might be cut and Dr. Thameling then spoke with Wilson about this matter. [Doc. 30-5 at pp. 8-9]. On July 18, 2009, Dr. Cass contacted Wilson in order to set up a meeting so that they could discuss the proposed elimination of the philosophy program, but Wilson declined. *Id.* at p. 9. Finally, Wilson attended the August 28, 2009 ULS Board of Supervisors meeting where they discussed and voted to eliminate the program. *Id.* Public comment was allowed but Wilson elected not to voice her opinion. As such, Wilson's right to be heard was satisfied by the opportunity to participate and contribute to the decision-making process. *Texas Faculty*, 946 F.2d at 387. The Appeals Committee later found that Wilson was offered the

15

opportunity to discuss the process with Dr. Cass and/or Dr. Richters but failed to do so. [Doc. 30-32]. Also, the Appeals Committee explained, "[b]efore termination of the appointment of Dr. Wilson, both Dr. Cass and Dr. Richters made 'every reasonable effort [to find] another suitable position within the university.'" *Id.* at p. 2.  In brief, the record demonstrates that she had many opportunities to present her arguments, through multiple levels of review within the university, and one who has spurned an invitation to explain herself can't complain that she has been deprived of an opportunity to be heard. [Doc. 30-35 at pp. 8-9].

The lack of a more formal hearing is not fatal to the Defendants on this claim based on the particular circumstances. The case law makes clear that pre-termination need not be elaborate and the formality and procedural requisites can vary. *Loudermill,* 470 U.S. at 545 *(citing Boddie v. Connecticut*, 401 U.S. 371, 378 (1971)). In *Texas Faculty*, 946 F.2d at 388, the Fifth Circuit rejected the appellants' argument that a formal procedure was necessary during termination decisions resulting from program termination. Instead, the Fifth Circuit found that the Due Process Clause "requires little formality." *Id.* This Court will not second guess the system's decision regarding the formalities of its internal affairs nor function as a super personnel department as long as the minimum due process required was provided. Further, a hearing is required only if there are material factual disputes. District courts routinely grant summary judgment without receiving oral testimony, and they dismiss complaints without receiving evidence, yet no one supposes that the Federal Rules of Civil Procedure violate the Constitution on that account. *Wozniak*, 236 F.3d at 890. The Due Process Clause does not require a hearing– in either a court or a university– where there is no disputed issue of material fact to resolve. *See Codd v. Velger*, 429 U.S. 624 (1977). Here there is no material dispute: the program discontinuance policy eliminated the philosophy program along with

16

its faculty positions. Why hold a hearing when there was no dispute?

Due process safeguards are not to be analyzed in a vacuum, but rather must be analyzed as a flexible concept providing "such procedural protections as the particular situation demands." *Gilbert*, 520 U.S. at 930. A particularly illustrative case is *Frumkin v. Bd. of Trustees, Kent State Univ.*, 626 F.2d 19 (6th Cir. 1980) in which a tenured professor at a state university was discharged when federal funding for the program was eliminated. In *Frumkin*, the Sixth Circuit found that the plaintiff-appellant received sufficient due process because he had ample opportunity to present his case to a hearing committee in a manner calculated to achieve a fair result. *Id.* at 21.

Furthermore, even if the pre-termination procedures used were weak, the Fifth Circuit has countenanced the dispensation of a pre-termination hearing when: (1) the deprivation is directly necessary to secure an important government or general public interest, (2) there is a special need for very prompt action, and (3) the person initiating the seizure has been a government official responsible for determining, under the standards of a narrowly drawn statute, that it was necessary and justified in the particular instance. *Breath v. Cronvich*, 729 F.2d 1006, 1010 (5th Cir. 1984), cert. denied, 469 U.S. 934 (1984). The instant case arguably meets all three of these express reasons, especially the first and second reasons. Given the reasons underlying the program discontinuance policy, a need for prompt action existed and such action was in the public interest.

C. Post-Termination Due Process Concerns

This Court finds that the post-deprivation process employed in this case also satisfies the Due Process Clause. The program discontinuance policy provided that the sole appeal during the process would be the appeal of the discontinuance of the program, not the elimination of the position of the faculty member. Wilson appealed the discontinuance of the philosophy program to ULM. The

17

Appeals Committee met and denied the appeal, unanimously upholding the decision of the budget review process to discontinue the philosophy discipline at ULM. [Doc. 30-32]. The Appeals Committee met over the course of three days and reviewed the policies and procedures used during the termination process. The Appeals Committee also found that due to the circumstances of the case, it was not necessary to conduct a hearing with Wilson. *Id.* The Appeals Committee noted that Wilson was offered the opportunity to discuss the process with Dr. Cass or Dr. Richters but failed to do so. A decisive factor guiding this Court's decision is that the Appeals Committee *unanimously concluded* that Wilson was not denied rights she was owed. *Id.* Wilson argues that the Appeals Committee review should be discounted because they made their assessment based on the program discontinuance policy and not necessarily on tenure or termination. [Doc. 101-2 at p. 9]. This Court disagrees and finds that the Appeals Committee took a holistic look at Wilson's situation, including her termination and other relevant factors.

This Court is also persuaded by the fact that Wilson clearly made her voice heard via other available channels. Plaintiff first appealed to Dr. Thameling in October 2009, then to Dr. Cass in November 2009, and then to Dr. Richters in February 2010. [Doc. 100 at p. 4]. On July 7, 2010, President Cofer sent a letter to Wilson stating that he had reviewed the Appeals Committee's decision and concurred. [Doc. 31-4]. President Cofer also stated that Wilson could appeal the decision through the official channels. On July 20, 2010, Wilson sent another letter to President Cofer expressing her frustration with the appellate process. [Doc. 31-4].

The post-termination process also involved diligent efforts to maintain Wilson. As noted above, Dr. Cass and Dr. Richters made every reasonable effort to find Wilson another suitable position within the university. [Doc. 30-32 at p. 2]. For instance, there is evidence in the record that

18

Dr. Richters contacted the Provost and Vice President for Academic and Student Affairs of the UL

System in 2011 who agreed to send faculty resumes to the provosts of other UL System schools as

well as the provosts at the Southern and Louisiana State University Systems. [Doc. 30-39]. Other

attempts were also made to help adversely affected faculty members. *Id*. Additionally, the Appeals

Committee found that because Wilson's work focused solely on philosophy and religion, she was

simply not qualified to teach in any other university position available. Further, they found that her

exclusive focus on philosophy and religion precluded the possibility of timely retraining. Finally, her

exclusive focus made relocation to another campus within the system seemingly impossible.

In sum, there is no convincing evidence in the record that Wilson was denied a meaningful

opportunity to argue that she should be retained in spite of the elimination of the academic program

in which she taught. Indeed, Wilson even concedes that she "followed all administrative, internal

appeals regarding her termination." [Doc. 60 at p. 6].

The gravamen of Plaintiff's due process arguments is that Defendants did not follow ULM

policies and procedures, which require more process than is constitutionally mandated.   A

university's failure to follow its own rules in terminating a tenured professor does not in and of itself

implicate constitutional due process concerns. *McIntosh v. Partidge*, 540 F.3d 315, 323–24 (5th

Cir.2008). That is because the federal courts, and not universities such as ULM, are responsible for

establishing the contours of the Due Process Clause of the Fourteenth Amendment. *See Tonkovich*

*v. Kansas Bd. of Regents*, 159 F.3d 504, 522 (10th Cir.1998). The fundamental issue in due process

law is whether state officials provided Plaintiff with the federal constitutional minimum. *McIntosh*,

540 F.3d at 324; *see Levitt v. Univ. of Texas*, 759 F.2d 1224, 1229 (5th Cir.1985) ("Even if the

University failed to follow its own rules, it nevertheless gave [the professor] all the process to which

19

he was entitled under the Constitution.").

Notwithstanding the preceding paragraph, there is no evidence in the record that the Defendants failed to follow the established rules. Many of Plaintiff's arguments hinge on the Faculty and Staff handbook which provides "Tenured faculty shall retain their status until they retire, resign, or are terminated for cause or as a result of financial exigency." [Doc. 30 at Exh. 8]. Quite clearly, the reasons underlying the program discontinuance policy constitute a financial exigency. Even if financial exigency was not officially triggered, the handbook specifies that the enumerated list is not exclusive. The handbook further notes, "Tenure shall be granted and held only within an academic discipline that is offered at the institution and assures renewed appointments only within that discipline." *Id*. As already noted, philosophy was categorically eliminated so it is impossible for Wilson to continue holding the position. In regards to Plaintiff's claims regarding other suitable positions, the Fifth Circuit has explained, "We have neither the competency nor the resources to undertake to micromanage the administration of thousands of state educational institutions." *Dorsett v. Board of Trustees for State Colleges & Universities*, 940 F.2d 121,124 (5th Cir.1991). "Of all the fields that the federal courts " 'should hesitate to invade and take over, education and faculty appointments at [the university] level are probably the least suited for federal court supervision.' " *Id*. (internal citations omitted). We are very cognizant of the fact that federal courts should not look for excuses to regulate the internal affairs of public universities but instead should respect the integrity of local decision-making authority. *Texas Faculty*, 946 F.2d at 385. Further, Wilson's specific claim fails on the merits. The Appeals Committee mentioned in its report that Wilson's termination was "regrettably unavoidable" because there were no other faculty members within the philosophy unit. [Doc. 30-32].

### D. Other Due Process Concerns

Wilson's reliance on *Texas Faculty*, 946 F.2d 379, is misplaced and, in fact, supports the Defendants' position. In *Texas Faculty*, the Fifth Circuit analyzed what due process was owed to faculty members with respect to a public university's decision to eliminate academic programs. Most notably, the court explained, "We believe that holding. . . that due process requires individual adversarial hearings for each faculty member terminated pursuant to such decisions would seriously impair the university's significant interest in administering its educational programs in the manner it deems best." *Id.* at. 385. Nevertheless, the court also stated "that only the barest procedural protections of notice and an opportunity to be heard need be afforded the individual faculty member." *Id.* at 387. The court was persuaded by the fact that the appellants were given twenty-months notice that the programs were to be phased out, and were repeatedly invited to meet with their respective deans to discuss the termination decisions. In the case at hand, Wilson was provided with notice on July 22, 2009 of a terminal year contract followed by a final appointment letter dated August 3, 2009 signed by both the Dean and the President. Wilson was notified that as of May 22, 2010 her employment was terminated which was later extended to August 28, 2010. Wilson appealed the elimination of philosophy to ULM. The Appeals Committee met and denied the appeal, upholding the decision of the budget review process to discontinue philosophy at ULM. Accordingly, the instant case clearly satisfies the standard laid out in *Texas Faculty*.

Another key point of the *Texas Faculty* court is that individual attention and circumstances regarding the termination procedure must be considered. Moreover, the faculty in question in *Texas Faculty* were tenured only through their university, not their academic programs as in the instant case, thus presenting an important distinction. [Doc. 30 (Faculty and Staff handbook)]. If a faculty

21

member is tenured through a university rather than a program, there is a more pressing need to find a suitable position within the university in the event a program is eliminated. In contrast, tenure tied to a department does not create the same need because the entire program is gone.

The Defendants' conduct was neither arbitrary nor capricious and fully complied with due process of law, and we do not believe this Court should substitute its judgment for that of the university authorities. The record strongly supports the conclusion that there are no genuine issues of material fact, and the due process claim is therefore dismissed as a matter of law. As a result, neither monetary nor prospective relief is available to Wilson under § 1983. *Dooley v. Fort Worth Indep. Sch. Dist.*, 686 F. Supp. 1194, 1200 (N.D. Tex. 1987) aff'd sub nom. *Dooley v. Ft. Worth Indep. Sch. Dist.*, 866 F.2d 1418 (5th Cir. 1989) ("Absent a violation of constitutional rights, section 1983 provides no independent basis for recovery or injunctive relief.").

**7. Retaliation Claim Against State and ULS/ULM Dismissed**

This Court also finds Wilson's retaliation claim against the State and Board of Supervisors of ULS unavailing. In her Complaint, Wilson alleges that her termination was in retaliation for filing discrimination complaints in the past. [Doc. 34-3 at p. 9 (Second Cause of Action); Doc. 100]. Title VII's anti-retaliation provision makes it unlawful for an employer to discriminate against any of its employees for opposing any employment practice made unlawful by the act. *Crawford v. Metropolitan Government of Nashville*, 555 U.S. 271, 274 (2009). To establish a prima facie case for retaliation a plaintiff must show: (1) she engaged in activity protected by Title VII; (2) her employer took an adverse employment action against her; and (3) a causal connection exists between the protected activity and the adverse employment action. *McCoy v. City of Shreveport*, 492 F.3d 551, 556-57 (5th Cir. 2007). In this case, Wilson has not even remotely shown a causal connection

22

between the purported protected activity and the adverse employment action.

Even if the court assumes that Plaintiff can establish a prima facie case, her retaliation claim still fails. The U.S. Supreme Court has held that Title VII retaliation claims must be proved according to traditional principles of but-for causation: this requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer. *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517 (2013). Wilson does not demonstrate that the decision to terminate her establishes retaliatory discrimination nor does she raise any reasonable inference of retaliatory-based discrimination. The record strongly supports the conclusion that Wilson was *only* fired because the philosophy program was on the chopping block. In fact, Wilson admits in her summary judgment that she "was not terminated for any other reason than program discontinuance." [Doc. 31-1 at p. 8]. Because this claim can be so easily disposed, the court sees no reason to discuss the prescription defense.

This Court notes that the overarching question in any employment discrimination case is not whether defendant's decision to fire plaintiff was correct, but whether it was discriminatory. In sum, considering the evidence as a whole, and viewing all of the evidence in the light most favorable to Wilson, no reasonable jury could find that Wilson's past complaints were the but-for reason for her termination, let alone that retaliation for the alleged misconduct played any substantial role in the decision to terminate Wilson's employment.

## 8. State Law Claims Dismissed

Defendants contend that they are entitled to judgment as a matter of law on all state law claims presented by Wilson. In brief, Wilson alleges that the Defendants violated her contractual rights as a tenured professor under state law. [Doc. 34-3 at pp. 9-10 (Third and Fourth Causes of

23

Action)]. We conclude that there is no genuine issue of fact as to whether the Defendants breached its contract. Wilson's termination was justified pursuant to the policies in effect and the termination procedures were in compliance with the relevant materials. As discussed at length earlier, the Appeals Committee unanimously concluded that Wilson was not denied any rights she was owed. This Court reinforces that we will not second guess the university's decision regarding the formalities of its internal affairs nor function as a super personnel department.

## 9. Impairment of Contracts Claim Dismissed

Wilson's fifth cause of action is that the Defendants' conduct and practices violated her rights under the Contracts Clause. For the reasons already discussed at length in this opinion, this Court readily concludes that this claim has absolutely no merit. Accordingly, it is also dismissed.

### CONCLUSION

The Court concludes that there is no genuine issue as to any material fact and the Defendants are entitled to judgment as a matter of law on all of Wilson's claims.

Having reviewed the motions, the submissions of the parties, and the record and the applicable law, Defendants' motions for summary judgment [Doc. 30; 71] are hereby **GRANTED** and Plaintiff's motions for partial summary judgment [Doc. 31; 74] are hereby **DENIED**.

Ultimately, this case is dismissed in its entirety.

**THUS DONE AND SIGNED**, this ___5___ day of May, 2014.

DONALD E. WALTER
UNITED STATES DISTRICT JUDGE

24